[Civ. No. 13016.   Second Dist., Div. Two.   Oct. 2, 1941.]

STANLEY G. RIES et al., Appellants, v. DR. BENNO Z. REINARD, Respondent.

C. P. von Herzen for Appellants.

John N. Hurtt for Respondent.

McCOMB, J.—From a judgment in favor of defendant after trial before the court without a jury in an action to recover damages for alleged malpractice, plaintiffs appeal.

Viewing the evidence in the light most favorable to defendant (respondent), the essential facts are:

On December 19, 1938, plaintiff Ruth Ries consulted defendant, a physician and surgeon, relative to an itching in the region of her vagina. After taking said plaintiff's history, defendant made a smear from the vagina, urethra, and cervix, and, after a microscopic examination of the smear (known as the methylene blue test) told plaintiff that she had gonorrhea. They then discussed the possible source of her infection, defendant telling her that she could have contracted the disease in all probability only by sexual contact. She informed defendant that the itching had occurred shortly after intercourse with her husband two days previously. Defendant then told plaintiff to talk to her husband or, if she preferred, that he would talk to him. Defendant prescribed treatment for Mrs. Ries which, among other things, consisted of tablets containing sulfanilamide.

On December 21, 1938, plaintiff Stanley G. Ries, the husband of Ruth Ries, consulted defendant who endeavored to obtain a smear from the entrance of said plaintiff's urethra, but was unsuccessful. He, however, obtained an imprint which he examined microscopically, and he expressed doubt to said plaintiff as to whether he was afflicted with gonorrhea but told him that he was convinced that his wife was suffering from the disease and he considered it advisable for Mr. Ries to commence treatment immediately. He asked him to return the following day for further examination. Mr. Ries never returned to defendant for further treatment.

December 22, 1938, both plaintiffs consulted Dr. J. S. Gilbert, who made smears and sent them to a laboratory for examination. The laboratory after a test known as the "gram negative stain" returned them to Dr. Gilbert with a statement that their tests showed the specimens "negative"; whereupon Dr. Gilbert declared that neither plaintiff was suffering from gonorrhea. A few months subsequently plaintiffs commenced the present action against defendant, whereupon defendant sent the slide containing the smear from Mrs. Ries to two laboratories, where the "gram negative stain" test was applied and both laboratories reported a positive reaction showing gonococci.

These are the questions necessary for us to determine:

*First:* Is the evidence sufficient to sustain a judgment in favor of defendant against plaintiff Ruth Daniels Ries?

*Second:* Is the evidence sufficient to sustain a judgment in favor of defendant against Stanley G. Ries?

*Third:* Did the trial court determine the rights of the parties prior to the submission of the cause for decision?

*Fourth:* Did the trial court commit prejudicial error in (a) limiting the period of time in which plaintiff's expert could state with scientific certainty by examination that Mrs. Ries did not have gonorrhea, (b) sustaining an objection to a hypothetical question which plaintiffs asked one of their expert witnesses, and (c) sustaining an objection of defendant to a question asked by plaintiffs of an expert witness of defendant relative to the merit and demerit of the methylene blue and gram negative stain tests?

*Fifth:* Was it prejudicial error for the trial court to overrule plaintiffs' objection to a hypothetical question which defendant asked one of his expert witnesses?

The first question must be answered in the affirmative and is governed by the rule of law that a physician and surgeon is not required to make a perfect diagnosis but is only required to have that degree of skill and learning ordinarily possessed by physicians of good standing practicing in the same locality and to use ordinary care and diligence in applying that learning to the treatment of his patient. (*Engelking* v. *Carlson,* 13 Cal. (2d) 216, 220 [88 Pac. (2d) 695].) The evidence in the instant case discloses that it was the ordinary practice of physicians and surgeons in this community in making diagnoses for gonorrhea to use either the methylene blue test or the gram negative stain test. In the present case the evidence discloses that at the time Mrs. Ries consulted defendant he made the methylene blue test which showed she was suffering from gonorrhea. Subsequently the same slides were submitted by him to two independent laboratories where the gram negative stain tests were made showing the presence of gonococci. It therefore appears that there was substantial evidence to support the finding of the trial court that defendant had used the requisite skill in diagnosing Mrs. Ries' complaint.

The second question likewise must be answered in the affirmative. Defendant testified that after making an

examination of Mr. Ries he told him that he did not think that he was suffering from gonorrhea but recommended that he return for further examination, which Mr. Ries failed to do. Obviously defendant's conduct relative to Mr. Ries was proper and not actionable.

The third question must be answered in the negative. During the course of the trial the following colloquy between court and counsel occurred:

"THE COURT: Have you got another long hypothetical question?

"MR. HURTT: It is about half as long as the other.

"THE COURT: Another set of facts?

"MR. HURTT: It relates to the plaintiff Stanley Ries. The facts are somewhat different.

"THE COURT: You mean about his coming back? I am not concerned with Mr. Ries at all, because, in view of the testimony of the defendant under 2055, he said in his opinion he did not have it. Just taking extra caution.

"MR. HURTT: Yes.

"THE COURT: His records show that.

"MR. HURTT: If your Honor feels that way—

"THE COURT: The plaintiffs' case hinges upon Mrs. Ries, not upon Mr. Ries.

"MR. HURTT: Well, I will forego it.

"MR. GOLD: In that connection, if your Honor please, if you want any argument on that point, I think the very fact that Dr. Reinard now—

"THE COURT: Go ahead and finish your hypothetical question. It is quicker. I just didn't want another long hypothetical question. There is a conflict on that point, and I thought, in view of his office records, that the case hinges on Mrs. Ries rather than on Mr. Ries. Read it through fast for him."

The trial court's remarks in the foregoing colloquy were not prejudicial to plaintiffs nor did they show that the trial judge had reached a conclusion upon the case. It is not unusual nor is it improper for the trial judge in passing upon questions of law relative to the admissibility of evidence, motions to strike, etc., to announce for the guidance of counsel the reasons upon which he predicates his rulings, although by so doing he necessarily expresses an opinion upon the evidence which has been already introduced. Such ex-

pressions of opinion are not intended to be nor are they final expressions upon the ultimate facts to be found in the cause then pending, but are mere expressions of tentative opinions for the benefit and guidance of counsel. (See *Reed* v. *Clark*, 47 Cal. 194, 200.)

■ The queries in paragraphs (a) and (b) of the fourth question must be answered in the negative, for the reason that the questions were in fact answered by the witness and no motion to strike the answers was made. Therefore, the witness' answers stood as evidence in the case, which we must presume the trial judge considered upon the final submission of the cause for his determination.

■ The query in paragraph (c) of the fourth question must likewise be answered in the negative. During the examination of Mr. Feinberg the following occurred:

"Q. BY MR. GOLD: If you were to receive a smear that had already been stained with methylene blue, and if it is reported to be a smear taken some six or seven months before, what would you state as to the reliability of such a diagnosis from a smear of that sort?

"MR. HURTT: I object to that; this witness not qualified to answer that question.

"THE COURT: I will sustain the objection."

The trial court's ruling was correct. The question called for the expression of an opinion of an expert and the record fails to disclose that the witness Feinberg was an expert upon the subject relative to which he was being questioned.

■ The fifth question must be answered in the negative. During the examination of Drs. Crane and Fagan, expert witnesses called by defendant, a hypothetical question was asked each, after which the following objection and ruling occurred:

"MR. GOLD: Just a moment, to which I object as asking a double question.

"THE COURT: Overrule the objection and let him answer."

Plaintiffs now urge that the objection to the question should have been sustained for the reason that the question contained objectionable matter and was predicated upon a state of facts of which no evidence had been received. The objections now urged by plaintiffs were not called to the attention

of the trial court and, therefore, have been waived. The rule is settled in California that a party cannot urge for the first time on appeal objections to evidence, which objections, as in the instant case, if made in the trial court might have been obviated. (*Matthiesen* v. *Smith,* 16 Cal. App. (2d) 479, 482 [60 Pac. (2d) 873].)

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 27, 1941.