J. C. WATSON, Appellant, v. LOS ANGELES TRANSIT
LINES (a Corporation) et al., Respondents.

Melvin Simon for Appellant.

Henry R. Thomas and Henry F. Walker for Respondents.

KINCAID, J. pro tem.*—Action for damages for personal injuries sustained by plaintiff who was a guest on the rear seat of a motorcycle being operated by one Danny Tracy. After a trial by jury, a verdict was rendered in favor of defendants, the jury having first found specifically on six written interrogatories submitted by the court. Plaintiff's motion for a new trial having been denied, appeal is taken from the judgment rendered on the verdict.

The cause was tried on the issues raised by the second amended complaint and the answer thereto. Three causes of action are set forth in the second amended complaint, based on negligence, negligence in moving the streetcar after the original collision, and on wilful and wanton conduct of the motorman of the streetcar, defendant Eric Smith, in moving it after the original collision and while plaintiff was trapped underneath the streetcar, thereby causing further injuries to the plaintiff.

The accident occurred at the intersection of Ninth, Main and Spring Streets in Los Angeles. These three streets intersect at this point with Ninth Street running approximately east and west, Main Street north and south, and Spring Street beginning at the intersection and running in a general northwesterly direction.

The motorcycle on which plaintiff was riding was southbound on Main Street at about 7:55 o'clock, the morning of March 8, 1953, and stopped at Ninth Street in response to a traffic signal. At about the same time the defendants' streetcar stopped across the intersection, having been proceeding northerly on Main Street. It loaded and unloaded passengers at the safety zone south of the southern crosswalk line of the intersection. When the signal changed to "go" for north-south traffic, Tracy started his motorcycle and, under the conflicting evidence, it proceeded at speeds ranging from the standing start to estimates of 10 to 50 miles per hour when it struck the streetcar head-on, the motorcycle and both its occupants being partially forced under the streetcar. The car started forward on the "go" signal and was to proceed toward the northwest along Spring Street. It had reached a speed of from one to five miles per hour when the impact occurred

---

*Assigned by Chairman of Judicial Council.

at a point some seven to ten feet north of the south crosswalk of Main Street. There was conflicting evidence as to whether the motorman sounded his warning bell prior to the impact, whether he was asked not to move the streetcar back after the happening of the accident and whether in fact he did move it backward. The streetcar was subsequently jacked up by an emergency crew and the plaintiff was removed from under it by ambulance attendants.

The court submitted six special interrogatories to the jury and in the light of the jury's vote thereon the first three appear pertinent to the matters herein raised on appeal, they being as follows:

"Question No. 1: With respect to the collision, was the negligence, if any, of Danny Tracy the *sole* proximate cause of the collision? Answer: Yes. 10 No. 2

"Question No. 2: With respect to the collision, was the motorman Eric Smith guilty of any negligence which proximately caused or contributed to cause the collision? Answer: Yes. 2 No. 10

"Question No. 3: After the collision, did the motorman Eric Smith move the streetcar while the plaintiff was underneath it? Answer: Yes. 2 No. 10."

█ Plaintiff complains that the trial court should have granted his motion for a new trial on the ground of misconduct on the part of counsel for the defendants. particularly in alluding to the filing of a second amended complaint by plaintiffs some one year after the filing of the original complaint in which his second and third causes of action were added. Over objection, but with permission of court, the defendants' counsel commented in his argument to the jury as to this delay in asserting the added contentions of the claimed backing of the streetcar by the motorman while the plaintiff was yet under it. The court had previously sustained plaintiff's objections to questions directed to the plaintiff on cross-examination as to this subject. Plaintiff principally relies on *Merralls* v. *Southern Pac. Co.,* 182 Cal. 19 [186 P. 778], wherein it was held that the trial judge did not abuse his discretion in granting plaintiff a new trial on the ground of misconduct of the attorney for defendant when the latter persisted in referring in argument to the fact that only three days before the trial, the plaintiff had caused the complaint to be amended by inserting the words "more than" between the words "of" and "twenty-five miles an hour." In that case the court granted a motion for a new trial. In this case

the claimed prejudicial comments of defendants' attorney were fully considered by the trial judge and were found not to have been prejudicial in his denial of the new trial motion. We find no abuse of discretion by the court in this regard.

Plaintiff next contends a new trial should have been granted him in that he was denied a fair trial as shown by an affidavit of one of the trial jurors, Minna M Lewis, wherein she states in substance that she read to her fellow jurors in the jury room definitions of "negligent" and "prudent" which she had obtained from Webster's International Dictionary, Collegiate Edition.

A juror cannot impeach his own verdict, nor may a dissenting juror impeach the verdict of his fellow jurors, by affidavit except where the verdict was reached by lot or chance. (Code Civ. Proc., § 657, subd. 2; *McWilliams* v. *Los Angeles Transit Lines,* 100 Cal.App.2d 27, 29 [222 P.2d 953]; *Woods* v. *Pacific Greyhound Lines,* 91 Cal.App.2d 572, 576 [205 P.2d 738].)

An additional exception has been recognized whereby affidavits of jurors may be considered which relate to occurrences during the trial and the deliberations of the jury tending to establish the bias of a juror or other prejudicial circumstance *existing at the time of his impanelment which he concealed during the voir dire examination directed to that point.* (*Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671, 674 [292 P.2d 257].) It must be shown that the bias or other prejudicial circumstance existed at the time of the *voir dire* examination and was concealed by the juror. *Shipley* v. *Permanente Hospital,* 127 Cal.App.2d 417, 424 [274 P.2d 53, 48 A.L.R.2d 964], distinguishing between that which had origin after the impanelment and before the discharge of the jury from that which had origin before the impanelment and continuing until the discharge of the jury. (*Williams* v. *Bridges,* 140 Cal.App. 537, 540 [35 P.2d 407].)

Prejudice from the claimed misconduct must be shown. (*People* v. *Thomas,* 108 Cal.App.2d 832, 837 [239 P.2d 914]; *Anderson* v. *Pacific Tank Lines,* 52 Cal.App.2d 244, 249 [126 P.2d 153].) No prejudice has been shown to have resulted to plaintiff by reason of Juror Lewis's looking in the dictionary and reading the definition, if so she did. The verdict was returned by a 10-2 vote, Juror Lewis being one of the two dissenting jurors.

Plaintiff's principal point on appeal seems to be his claim of error in the court's instructions to the jury. At

request of plaintiff, an instruction was given on concurrent negligence to the effect that it is no defense to defendants that Tracy was proximately negligent as his negligence cannot be imputed to plaintiff, he being merely a guest, where they find defendants guilty of any negligence proximately contributing to the happening of the accident. Prejudicial error is claimed in then giving the following instruction: ''These are the issues you must determine: If you find from the evidence that the defendant Smith was guilty of negligence which proximately caused or contributed to cause the collision between the streetcar and the motorcycle, you would then have to find for the plaintiff on that issue and award plaintiff damages proximately caused thereby, measured by the Court's instructions. If you should find from the evidence that the defendant Smith was not guilty of any negligence that proximately caused or contributed to cause the said collision, your finding would have to be for the defendants on that issue.''

Other instructions given seem to have made it clear to the jury that the plaintiff, as a matter of law, could not have been contributorily negligent; that no negligence on the part of Tracy could be imputed to plaintiff and that any such negligence could not bar plaintiff's right to recover against defendants. There is ample evidence by which the jury could find that the accident was caused solely by the negligence of Tracy as was found by them in their answers to the second interrogatory. We find no error in the instructions of the court as addressed to the jury in this case.

Plaintiff claims defendants' attorney was prejudicially allowed to impeach his own witness Chester under the guise of refreshing his recollection. He was asked as to which direction plaintiff's and Tracy's heads were pointing during the 40 feet of travel of the motorcycle prior to the accident. He replied, ''straight ahead.'' He was asked, over objection, if a previously given written statement might serve to refresh his recollection as to this point. After having read the statement he agreed that the reading of the statement did refresh his recollection as to whether their faces were pointed ahead or in a different direction from the oncoming streetcar. His final answer was that he now was unable to recall the direction in which they were facing. No prejudice would seem to have resulted. In any event, when a witness called by a party fails to testify to matters previously within his recollection, it is not incumbent upon the party producing the witness to wait for the assaults of cross-examination to expose the

discrepancies. He may with propriety refresh his recollection to the end that the witness and his present evidence may both be put fairly and in the proper light before the jury. (*People* v. *Durrant*, 116 Cal. 179, 214 [48 P. 75].; *People* v. *Zammora*, 66 Cal.App.2d 166, 216-217 [152 P.2d 180] ; *People* v. *Verodi*, 150 Cal.App.2d 137, 148-150 [309 P.2d 568].)

 A final point is made that a written statement of plaintiff's witness Murphy should have been admitted into evidence on redirect examination when the witness had made statements on cross-examination in conflict with those in the written statement. A required foundation for admission of hearsay statements offered as asserted rehabilitating matter is that the same must have been made at a time prior to the existence of motive or interest or of fabrication. (*People* v. *Kynette*, 15 Cal.2d 731, 753-754 [104 P.2d 794] ; *Bickford* v. *Mauser*, 53 Cal.App.2d 680, 687 [128 P.2d 79].) No such proof was here offered or made. Ordinarily the question of admissibility of such proof is left to the trial judge. (*Jayne* v. *Morck*, 43 Cal.App.2d 743, 745-746 [111 P.2d 696].) No abuse of the court's discretion is here indicated.

The judgment is affirmed.

Fox, Acting P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied February 18, 1958, and appellant's petition for a hearing by the Supreme Court was denied March 19, 1958. Carter, J., was of the opinion that the petition should be granted.