[Civ. No. 5793.   Fourth Dist.   Jan. 16, 1959.]

CARL B. BOONE, Appellant, v. SPRING HOLLOW FARMS (Individuals' Fictitious Name) et al., Respondents.

Adams & Hunt and Vernon W. Hunt, Jr., for Appellant.

Parker, Stanbury, Reese & McGee and Richard E. Reese for Respondents.

MUSSELL, Acting P. J.—This is an action for damages for personal injuries sustained by plaintiff when a motorcycle which he was operating in a westerly direction on Second Street at or near its intersection with Campo Walk, in the city of Long Beach, collided with an automobile being driven by one of the defendants. A jury trial resulted in a verdict in favor of the defendants and against the plaintiff. Judgment was entered in accordance with the verdict. Plaintiff's motion for a new trial was denied and he appeals from the judgment, claiming that irregularities occurred in the proceedings of the jury which denied appellant a fair trial as a matter of law; that the matters complained of consist of concealment of certain prejudices and attitudes on *voir dire* examination, reception of evidence outside of court and use of unauthorized sources of law; that the same acts constituted misconduct of jurors which denied appellant a fair trial. Insufficiency of the evidence to support the verdict and judgment is not specified as a ground of appeal.

In support of his motion for a new trial and of his contention that irregularities occurred in the proceedings of the jury, appellant filed several affidavits. It is stated in the affidavit of Evelyn Sutherland that she was a juror at the trial; that during the deliberations in the jury room a cojuror, Mrs. Brock, stated to the group that she had gone to the intersection where the accident occurred three times during the trial; that the curve was very dangerous; that Mrs. Brock then read from a summary of the Vehicle Code which she had brought with her into the jury room. Matilda Smith, another juror, stated in her affidavit that Mrs. Brock stated that she had gone to the scene of the accident and had experimented with her car in making the turn, as the defendant had done, and that the defendant could not have done anything besides what he did; that Mrs. Brock read to the jury from a pamphlet which she said was the Vehicle Code of the State of California; that subsequent to the trial Mrs. Anderson, forewoman of the jury, stated to affiant that she was against

awarding substantial amounts as damages for pain and suffering because it made her insurance premiums go up.

The affidavit of Ida May Roberts states, in substance, that Mrs. Brock stated she had gone to the scene of the accident and experimented with her car and that Mrs. Brock read from a Vehicle Code summary. The affidavit of Juror Zelma Bosshard was to the same effect as those of the other jurors concerning the statements made by Mrs. Brock. Zelma Bosshard further stated in her affidavit that Mrs. Anderson had stated to her that she did not believe in awarding much in damages because it would cause her insurance rates to be raised. Affidavits were also filed by Hazel L. Moody and Atha D. Merriman to the effect that Mrs. Anderson had stated in another case in which she was a juror that she was against large verdicts because they caused insurance rates to be high.

In a counteraffidavit filed by Juror Edith Anderson it was stated as follows:

"I was selected and sat as a juror in the trial of the above entitled matter.

"No questions were asked of me at the trial of this action during the time the jurors were being questioned by the lawyers as to whether I had any belief that a large judgment in favor of the plaintiff in this action might affect my insurance rates.

"I at no time stated to Zelma Bosshard that I 'did not believe in awarding much in damages because it would cause my insurance rate to be raised.'

"At no time did I state to Matilda Smith that I, 'was against awarding substantial amounts as damages for pain and suffering because it made my insurance premiums go up.' I have at all times stated to whoever asked me concerning my frame of mind concerning the award of damages in personal injury actions that I would at all times follow the Court's instructions to the best of my ability and base any award for damages which I might make on the evidence before me and the instructions of the court. This has always been my frame of mind and still is my frame of mind concerning damages in accident cases. Had it been my decision to award damages in this case, which it was not, I would have voted to award plaintiff a sum of money which would fair [sic] and adequately compensate him under the evidence in the case and under the Court's instructions, whether that sum might be large or small, and without allowing anything to be taken

into consideration other than what I heard in Court and the Judge's instructions.

"I have at all times had a fair and open mind concerning this or any accident case and there has at no time been any statement of mine on my part which would prevent me from returning a fair and impartial verdict based upon evidence and the law as given to me by the Court. My decision in this case was based upon evidence and the law as I saw it."

In *Kollert* v. *Cundiff,* 50 Cal.2d 768, 773 [329 P.2d 897], it is held that it is the general rule in California that affidavits may not be used to impeach a verdict (citing many cases) and that

"An exception to the general rule is made by statute where 'any one or more of the jurors have been induced to assent to any general or special verdict . . . by a resort to the determination of chance. . . .' (Code Civ. Proc., § 657, subd. 2.) Another exception, recognized by judicial decision, is that affidavits of jurors may be used to set aside a verdict where the bias or disqualification of a juror was concealed by false answers on *voir dire.* (E.g., *Williams* v. *Bridges,* 140 Cal.App. 537 [35 P.2d 407].)

"Subdivision 1 of section 657, which provides that a verdict may be vacated for 'irregularity in the proceedings,' does not refer to jurors' affidavits and may not be regarded as permitting the use of such affidavits in situations where they would not otherwise be proper. (*Cf. People* v. *Evans,* 39 Cal.2d 242, 250 [246 P.2d 636] [rejecting a similar argument made with respect to Pen. Code, § 1181, subd. 2].) The statements to the contrary in *Shipley* v. *Permanente Hospital,* 127 Cal.App.2d 417, 424 [274 P.2d 53, 48 A.L.R.2d 964], are disapproved."

In *Watson* v. *Los Angeles Transit Lines,* 157 Cal.App.2d 112, 116 [320 P.2d 890], it is said:

"A juror cannot impeach his own verdict, nor may a dissenting juror impeach the verdict of his fellow jurors, by affidavit except where the verdict was reached by lot or chance. (Code Civ. Proc., § 657, subd. 2; *McWilliams* v. *Los Angeles Transit Lines,* 100 Cal.App.2d 27, 29 [222 P.2d 953]; *Woods* v. *Pacific Greyhound Lines,* 91 Cal.App.2d 572, 576 [205 P.2d 738].)

"An additional exception has been recognized whereby affidavits of jurors may be considered which relate to occurrences during the trial and the deliberations of the jury tending to establish the bias of a juror or other prejudicial circum-

178

stance *existing at the time of his impanelment which he concealed during the voir dire examination directed to that point.* (*Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671, 674 [292 P.2d 257].) It must be shown that the bias or other prejudicial circumstance existed at the time of the *voir dire* examination and was concealed by the juror. *Shipley* v. *Permanente Hospital,* 127 Cal.App.2d 417, 424 [274 P.2d 53, 48 A.L.R.2d 964], distinguishing between that which had origin after the impanelment and before the discharge of the jury from that which had origin before the impanelment and continuing until the discharge of the jury. (*Williams* v. *Bridges,* 140 Cal.App. 537, 540 [35 P.2d 407].) ''

In *Maffeo* v. *Holmes,* 47 Cal.App.2d 292 [117 P.2d 948], two of the jurors had, during the trial, visited the scene of the accident involved and reported their observations during deliberations. The court cited the general rule announced in the Watson case, *supra,* and held that on the motion for a new trial affidavits or testimony or extrajudicial statements offered to disclose the behavior of a juror should be rejected upon considerations of public policy. See also *McWilliams* v. *Los Angeles Transit Lines,* 100 Cal.App.2d 27, 29 [222 P.2d 953].

Affidavits of jurors are admissible which relate to occurrences during the trial and the deliberations of the jury tending to establish the bias of a juror or other prejudicial circumstance existing at the time of his impanelment which he concealed during the *voir dire* examination directed to that point. (*Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671, 674 [292 P.2d 257].)

The record shows that the following took place during the *voir dire* examination of Juror Edith Anderson :

''Q. Is there anything about the amount of $147,000, just in and of itself, before you have heard any of the evidence in this case, which would affect you one way or the other? A. No, I wouldn't think so.

''Q. In other words, you'd be willing to wait until the evidence is all in and from the evidence and the Judge's instructions you'd be willing to see what the evidence justified? A. I understand that is the way we are supposed to do.

''Q. That's right, and if it did justify a verdict for that amount, you would be willing to bring a verdict in for that amount? A. Yes, sir. . . .

''Q. I should make this clear, that all of these things which I am discussing with you are to test out your attitude and your open mindedness on the subjects and the Court is the

one that will give you the law and you will take the instructions from the Court, and should you happen to have any ideas of your own, either as to what the law is or should be, you will be willing to lay those aside and follow the court's instructions? A. Yes, sir.

"Q. Do you know of any reason why you could not be fair and impartial in this case? A. No, sir, I don't."

■ While the affidavits in support of the motion for a new trial indicate that Juror Edith Anderson made certain statements to cojurors, her affidavit contains a denial of these assertions. We therefore must assume that the trial court found that she had not made the statements attributed to her. This supports the implied finding of the trial court to the same effect. (*Bates* v. *Newman*, 121 Cal.App.2d 800, 812 [264 P.2d 197].)

In *Sharp* v. *Keating*, 13 Cal.App.2d 637, 640 [57 P.2d 539], the court said:

"Plaintiff assails the action of the trial court in denying the motion for a new trial, but we are of the opinion that such order should not be disturbed on appeal, because the weight of authority seems to be that where, as in this case, such motion is based on affidavits in support thereof, opposed by counter-affidavits fully denying all the material allegations contained therein, the order denying the motion for a new trial will be affirmed on appeal. (*Diller* v. *Northern Cal. Power Co.*, 162 Cal. 531 [123 P. 359, Ann.Cas. 1913D 908]; *Patterson* v. *Keeney*, 165 Cal. 465 [132 P. 1043, Ann.Cas. 1914D 232].)"

■ An order denying a new trial will not be disturbed if the record shows any basis upon which it may be upheld. (*Landrum* v. *Severin*, 37 Cal.2d 24, 28 [230 P.2d 337].)

Judgment affirmed.

Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 11, 1959.